**UNITED STATES of America,**
**Plaintiff,**

v.

**Neal Thomas NEAMAND, Defendant.**

**Crim. No. 14506.**

United States District Court
M. D. Pennsylvania.

June 30, 1969.

Bernard J. Brown, U. S. Atty., Scranton, Pa., for plaintiff.

Thomas Foley, Jr., Scranton, Pa., for defendant.

## OPINION

NEALON, District Judge.

Neal Thomas Neamand has been charged with a violation of the 1967 Military Selective Service Act, 50 U.S.C. App. § 462, for refusing to submit to induction into the Armed Services on June 11, 1968. Defendant was indicted on August 15, 1968. His first arraignment before this Court on October 4, 1968, was postponed when defendant appeared without counsel. An Attorney was then appointed and on January 31, 1969, defendant entered a plea of not guilty to the indictment. He then waived a jury trial and the case proceeded before this Court on February 17, 1969. Upon consideration of the merits of this case, I now find defendant guilty as charged in the indictment.

To place this case in proper perspective, we must consider defendant's Selective Service background. From the evidence adduced at the trial, I make the following findings of fact.

## FINDINGS OF FACT

1. Neal Thomas Neamand was born on November 4, 1942, and registered with Local Selective Service Board 114, Bethlehem, Pennsylvania, on November 14, 1960.

2. On February 12, 1963, Local Board 114 mailed defendant a Classification Questionnaire (SSS Form 100), which he completed and returned and which indicated that defendant was a full-time student at Lehigh University, Bethlehem, Pennsylvania, majoring in History. He did not claim status as a conscientious objector at this time.

3. Defendant was classified 2–S (the proper category for students) during his undergraduate years at Lehigh University. He received his Bachelor of Arts degree on June 8, 1964, and on June 22, 1964, Local Board 114 classified defendant 1–A.

4. On July 27, 1964, Local Board 114 classified defendant 2–S until June 15, 1965, upon being informed that defendant was accepted for admission to the Graduate School at Lehigh University beginning in September, 1964.

5. On June 22, 1965, Local Board 114 again classified defendant 2–S until June 1, 1966, upon being informed that defendant was a full-time graduate student at Lehigh University.

6. On March 23, 1966, defendant was ordered by his Local Board to report for an Armed Forces physical examination on April 19, 1966. He was subsequently found fully acceptable for induction.

7. On April 9, 1966, defendant requested a Conscientious Objector Form (SSS Form 150) from his Local Board and completed and returned it on April 21, 1966. Two members of the faculty at Lehigh University and one member of the faculty of Bloomsburg State College and defendant's sister wrote letters in support of defendant's claim.

8. On June 22, 1966, Local Board 114 again classified defendant 2–S, but on this occasion it was made effective only until October 1, 1966.

9. In August, 1966, defendant was appointed research assistant to Professor L. H. Gipson at Lehigh University and he so notified his Local Board.

10. On September 21, 1966, Local Board 114 considered defendant's Conscientious Objector Form and reclassified him 1–A. Defendant requested a personal appearance within the required time period. This was scheduled for October 18, 1966, but was later rescheduled for October 25, 1966.

11. In the interval before the personal appearance, Local Board 114 received correspondence from Professor Lawrence

Henry Gipson and Glenn J. Christensen, Provost and Vice President of Lehigh University, urging an occupational deferment (2–A) classification for defendant to aid Professor Gipson in completing the final volumes of "The British Empire Before the American Revolution" (Volumes XIII, XIV and XV).

12. At defendant's personal appearance before his Board, he presented for consideration a five-page statement of his views on war and a copy of a Vietnam Resolution approved by the Student Peace Union.

13. At its November 22, 1966, meeting, Local Board 114 classified defendant 2–A until November 22, 1967.

14. In October and November, 1967, defendant mailed to Local Board 114 resolutions and articles concerning the war in Vietnam and various poems and prose which he had composed.

15. On November 17, 1967, defendant informed his Local Board of his intention to travel outside the United States for the following ten to twelve months.

16. On December 12, 1967, Local Board 114 unanimously classified defendant 1–A and properly notified him.

17. By letter dated December 21, 1967, received by the Local Board on January 2, 1968, defendant appealed his 1–A classification. His file was then forwarded to the Pennsylvania State Appeal Board.

18. In the meantime, on January 18, 1968, Local Board 114 received a four-page letter from defendant dated January 9, 1968, further explaining his reasons for opposing his 1–A classification. The State Appeal Board then returned defendant's file to Local Board 114 for consideration.

19. At its January 23, 1968, meeting, Local Board 114 unanimously determined that the information submitted by defendant by letter dated January 9, 1968, did not warrant the reopening of his classification. Defendant was so notified

and the file was then returned to the State Appeal Board pursuant to defendant's previously filed notice of appeal.

20. The State Appeal Board unanimously classified defendant 1–A on April 16, 1968, and defendant was properly notified.

21. On April 24, 1968, defendant was ordered to report for induction on May 7, 1968. Defendant's mother then notified Local Board 114 that defendant was still out of the country. Accordingly, on April 29, 1968, with the approval of the State Selective Service Headquarters, the Local Board postponed the May induction date to June to allow defendant time to return to the United States.

22. On May 27, 1968, Local Board 114 ordered defendant to report for induction on June 10, 1968.

23. On June 5, 1968, defendant mailed Local Board 114 a letter expressing opposition to the Vietnam War and stating that he would " * * * not under any circumstances permit myself to be inducted into the military establishment."

24. On June 11, 1968,[1] defendant refused to be inducted into the Armed Forces at Wilkes-Barre, Pennsylvania.

25. On June 13, 1968, by letter dated June 8, 1968, defendant requested certain information (addresses, ages, military connections and length of service with the Selective Service System) concerning the Board members. On July 17, 1968, the Local Board, pursuant to advice from State Headquarters, declined to provide defendant with his requested information.

26. Defendant was indicted by the Grand Jury on August 15, 1968, and his arraignment was scheduled for October 4, 1968, and continued on that date when defendant appeared without counsel.

27. On November 25, 1968, defendant requested a second Conscientious Objector Form (SSS Form 150). It was completed and returned by him on December 24, 1968.

1. There is no explanation in the record as to the discrepancy in the date defendant was to report for induction and the date he refused to be inducted.

28. This second Form 150 was reviewed by Local Board 114 at a subsequent meeting, but the Board took neither affirmative nor negative action on the Form.

29. Defendant testified at trial in this Court that when he inquired about the status of this Form, the Clerk of the Local Board informed him that it was being considered and had been sent to Harrisburg.

30. Defendant also testified that while his conscientious objection claim originally was confined to his opposition to the war in Vietnam, his views expanded to opposition to war in any form and these enlarged views matured and crystallized between the time he first filed Form 150 on April 21, 1966, and the time of the filing of his second Form 150 on December 24, 1968. He testified further that his original views had not changed at the time he refused to be inducted on June 11, 1968.

## DISCUSSION

There are four issues before the Court for consideration:

1. Whether it was error for the Court to allow the Government to reopen its case, after it rested, to introduce defendant's entire Selective Service file into evidence;

2. Whether there was a basis in fact for the classification of defendant;

3. Whether the filing of defendant's second Form 150 was a change in status resulting from circumstances over which he had no control within the meaning of 32 C.F.R. § 1625.2;

4. Whether the 1967 Military Selective Service Act violates the First and Fifth Amendments of the United States Constitution.

## I. REOPENING OF THE GOVERNMENT'S CASE

At the close of the Government's case, defendant moved for judgment of acquittal on the grounds that defendant's entire Selective Service file was not introduced into evidence and that without its introduction, no basis in fact existed for defendant's classification. The Government then moved to reopen its case to introduce the defendant's entire file. This motion was granted. Defendant argues that this ruling was unfair and contrary to Rule 29 of the Federal Rules of Criminal Procedure.[2] I am unable to agree.

██ It is settled law in the Third Circuit that a decision allowing the Government to reopen its case is a matter within the discretion of the Trial Court. United States v. Zeid, 281 F.2d 825 (3d Cir. 1960), cert. denied, 364 U.S. 901, 81 S.Ct. 234, 5 L.Ed.2d 194 (1960). See also, Rhyne v. United States, 407 F.2d 657, 661 (7th Cir. 1969); 3 Orfield, Criminal Procedure Under the Federal Rules, §§ 26:216–26.218. In the absence of a clear abuse of that discretion, reversible error does not occur. In this case, it is not as if there was insufficient evidence introduced by the Government at the time it rested. The Secretary of Local Board 114 testified, as did the Lieutenant at the Armed Forces Induction Station at Wilkes-Barre, before whom defendant refused induction. Various exhibits were admitted which, together with the testimony, established the prima facie requirement of some basis in fact for the Board's decision and a violation of the Local Board's order of induction. In these circumstances, the belated introduction of the entire Selective Service file into evidence in a nonjury trial is not such an inherent defect

2. Rule 29(a) provides:
"Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right."

or such a manifest abuse of discretion as to warrant a judgment of acquittal under Rule 29(a), Fed.R.Crim.P.

## II. BASIS IN FACT FOR DEFENDANT'S CLASSIFICATION

The exemption claimed by defendant Neamand is that of 1–O, the conscientious objector classification, statutorily defined as follows:

"Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. As used in this subsection, the term 'religious training and belief' does not include essentially political, sociological, or philosophical views, or a merely personal moral code * * *." 50 U.S.C.App. § 456(j).

■ The 1967 Military Selective Service Act controls the disposition of this case. See United States v. Haughton, 290 F.Supp. 422 (W.D.Wash.1968). This is significant because the prior Act, the Universal Military Training and Service Act, provided that where a Local Board reached an adverse decision regarding the classification of a registrant asserting a conscientious objector claim, the Appeal Board referred the registrant's file to the Department of Justice for inquiry, hearing and recommendation prior to the Appeal Board's review of the file. The inquiry included an F. B. I. investigation and report, an appearance by the registrant before a hearing officer and a written recommendation by the hearing officer to the Appeal Board. However, under the 1967 Act, this procedure *is no longer a part of the law* due, according to the legislative history, to Congressional alarm over the delays resulting from Justice Department investigations, H.R.

Rep. 267, 90th Cong., 1st Sess. (1967), 2 U.S.Code Cong. & Adm.News p. 1308 (1967).

Judicial duties, however, are in no way altered by the lack of a Justice Department recommendation as to a registrant's sincerity. Section 10(b) (3) of the 1967 Military Selective Service Act states:

"No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction * * * Provided, That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant."

■ In applying this test, the Courts review the record of the highest body within the Selective Service System which has determined the registrant's classification. Here that body was the Pennsylvania State Appeal Board. An Appeal Board may or may not state its reasons for making its de novo classification, United States v. Stepler, 258 F.2d 310, 317 (3d Cir. 1958), but when no reasons are stated, a Court must assume that the Appeal Board gave consideration (1) to the information contained in the record of the Local Board, and (2) to general information concerning economic, industrial and social conditions, 32 C.F.R. § 1626.24. Little comfort is provided by this assumption, however, when, as here, a Local Board fails *to indicate reasons for any of its decisions.* In this event, a Court must indulge in the further assumption that the Local Board relied upon "whatever factual basis" is reflected in the record,[3]

---

3. In this regard, it is noteworthy that Selective Service Regulations provide:

"(b) The registrant's classification shall be determined solely on the basis of the official forms of the Selective Service System and such other written information as may be contained in his file * * *. Since it is imperative that appeal agencies have available to them all information on which the local board determined the registrant's classification, oral information shall not be con-

Owens v. United States, 396 F.2d 540 (10th Cir. 1968), and in so assuming, a Court must search the record for some affirmative evidence to support the Local Board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities, Dickinson v. United States, 346 U.S. 389, 74 S.Ct. 152, 98 L.Ed. 132 (1953), or of his sincerity and good faith, Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955).[4] Additional support is found in the strong presumption of regularity which attaches to the official proceedings of a draft board, Chaney v. United States, 406 F.2d 809 (5th Cir. 1969); Greer v. United States, 378 F.2d 931 (5th Cir. 1967), especially since the action of Local Boards " * * * inescapably involves a determination of fact and an exercise of judgment." Clark v. Gabriel, 393 U.S. 256, 89 S.Ct. 424, 21 L.Ed.2d 418 (1968).

■■ Offsetting these principles is the rule that a Court may consider the possibility that the Local Board proceeded under an erroneous view of the law. Sicurella v. United States, 348 U.S. 385, 392, 75 S.Ct. 403, 99 L.Ed. 436 (1955). This possibility most certainly looms large within a barren Selective Service record of a registrant asserting a conscientious objector status since "(t)he ultimate question * * * is the sincerity of the registrant in his claimed belief, a purely subjective question in which objective facts are relevant only to the extent that they supply help in its decision." United States v. Bellmer, 404 F.2d 132 (3d Cir. 1968). Now that Courts no longer have the aid of a Department of Justice inquiry as to sincerity, they must more carefully scrutinize

a registrant's record, United States v. St. Clair, 293 F.Supp. 337 (S.D.N.Y.1968); Reisner, The Conscientious Objector Exemption: Administrative Procedures and Judicial Review, 35 U.Chi.L.Rev. 686 (1968), to insure that the Selective Service System does not become a "monster which rules with no practical limits on its discretion." Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 157, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962). In doing so, however, a Court must be mindful that the registrant has the burden of establishing the right to a particular exemption. Dickinson v. United States, supra; United States v. Carroll, 398 F.2d 651 (3d Cir. 1968); 32 C.F.R. § 1622.1 (c); 32 C.F.R. § 1622.10.

An examination of the record relied upon by the Appeal Board in this case reveals the following conscientious objector information contained therein on December 12, 1967, when defendant was classified 1–A: (1) a Selective Service Form 150 filed April 21, 1966; (2) letters from two members of the faculty of Lehigh University and one from a faculty member at Bloomsburg State College in support of defendant's conscientious objector status; (3) one letter from defendant's sister outlining defendant's philosophy; (4) a five-page statement and a copy of the "Vietnam Resolution" adopted by the Student Peace Union Convention in 1966, and (5) newspaper and magazine clippings which expressed opposition to the Vietnam war and poems and prose material composed by defendant, and an article by a college theologian advocating civil disobedience as a means of opposing the Vietnam war. After defendant was reclassified 1–A on December 12, 1967, he appealed without re-

sidered unless it is summarized in writing and the summary placed in the registrant's file. Under no circumstances shall the local board rely upon information received by a member personally unless such information is reduced to writing and placed in the registrant's file * * *" 32 C.F.R. § 1623.1(b).

4. Our task would be greatly improved, of course, if Local Boards were required to

state their reasons for denying a requested classification and a transcript prepared of any personal appearance by the registrant before the Local Board. See Report of the National Advisory Commission on Selective Service (1967); United States v. Purvis, 403 F.2d 555 (2d Cir. 1968). These suggestions would be particularly helpful when a claim of conscientious objection is involved.

questing a personal appearance and submitted a four-page statement in support of his claim. The Local Board then determined that the latter statement did not warrant the reopening of defendant's classification. Based on the foregoing information, the Appeal Board classified defendant 1–A on April 16, 1968, by a 3–0 vote.

I find that a basis in fact did exist at this time for so classifying defendant. The Supreme Court has stated that the task of Local Boards and Courts " * * * is to decide whether the beliefs professed by a registrant are sincerely held and whether they are, in his own scheme of things, religious." United States v. Seeger, 380 U.S. 163, 185, 85 S.Ct. 850, 863, 13 L.Ed.2d 733, 747 (1965). I find that the record supports the conclusion that defendant's beliefs are not religious in his own scheme of things. On the Form 150 filed by defendant on April 21, 1966, defendant crossed out the word "religious" in the Series I claim for exemption. Question 6 in Series II—"Religious Training and Belief"—also contained a strike through the word "religious." Question 4 in Series II, designed to elicit the identity of the person upon whom the registrant relies for religious guidance, is answered by "none." A fair reading of defendant's answers to his first Form 150 indicates the manifest absence of any claim by defendant that meets the test set forth in Seeger. Nothing in the letters written by others on defendant's behalf, or defendant's statement submitted at the time of his personal appearance on Oc-

tober 25, 1966, would indicate otherwise. Moreover, a careful examination of the remainder of the information submitted by defendant offers no support for concluding that defendant's conscientious objection to participating in war in any form is " * * * by reason of religious training and belief." 50 U.S.C.App. § 456j. Indeed, it is my conclusion that defendant clearly is one whose views are " * * * essentially political, sociological, or philosophical * * * (or based on) a 'merely personal moral code.' " United States v. Seeger, supra, 380 U.S. at 173, 186, 85 S.Ct., at 858, 864, 13 L.Ed.2d at 741, 748; Vaughn v. United States, 404 F.2d 586 (8th Cir. 1968); Fleming v. United States, 344 F.2d 912 (10th Cir. 1965); United States v. Shacter, 293 F.Supp. 1057 (D.Md.1968). Accordingly, I find that there was a basis in fact for the decision of the Appeals Board in classifying defendant 1–A on April 16, 1968.

## III. POST-INDUCTION CONSCIENTIOUS OBJECTOR CLAIM

Under consideration at this point also is defendant's second Form 150 filed on December 24, 1968. Defendant argues in the alternative: (1) that the maturation process of his views in opposition to all wars is a change in status resulting from circumstances over which he had no control within the meaning of 32 C.F.R. § 1625.2;[5] (2) that the Local Board's treatment of his second Form 150 effected a waiver of the requirements of 32 C.F.R. § 1625.2, thus constituting a reopening of the case entitling defendant to a reclassification and all proce-

---

5. 32 C.F.R. § 1625.2 states:

"The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, the government appeal agent, any person who claims to be a dependent of the registrant, or any person who has on file a written request for the current deferment of the registrant in a case involving occupational deferment, if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; or (b) upon its own motion if such action is based

upon facts not considered when the registrant was classified which, if true, would justify a change in the registrant's classification; provided, in either event, the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252) or an Order to Report for Civilian Work and Statement of Employer (SSS Form No. 153) unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."

dural rights flowing therefrom. Principal reliance is placed on United States v. Gearey, 368 F.2d 144 (2d Cir. 1966) ; 379 F.2d 915 (2d Cir. 1967), cert. denied 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967), rehearing denied, 389 U.S. 1010, 88 S.Ct. 561, 19 L.Ed.2d 611 (1967), which sets forth the theory advanced by defendant. See United States v. Stafford, 384 F.2d 215 (2d Cir. 1968).

Defendant's testimony indicates that the changing of his views from opposition to the war in Vietnam to opposition to "war in any form" began to crystallize in the summer of 1968 and that they matured during November, 1968, although no exact date was ever fixed. It is known, however, that on November 25, 1968, a second form 150 was obtained by defendant, who completed and returned it on December 23, 1968. The significant fact is that this was over six months after defendant refused induction into the Armed Services, over four months after defendant was indicted, and over two months after the first attempt to arraign defendant in this Court. The latter arraignment was continued until January 31, 1969, approximately six weeks after the filing of defendant's second Form 150. In these circumstances, it is obvious that at the time of his induction on June 11, 1968, there was no change in his status resulting from circumstances over which he had no control within the meaning of 32 C.F.R. § 1625.2.

■ While there is indeed a conflict among Circuits on this question, viz., whether or not the Local Board must consider a registrant's claim that his conscientious objector views crystallized after the mailing of the order to report for induction but before the date of induction, the rule followed in this District is that § 1625.2 is a valid regulation and that it can be lawfully used to foreclose consideration of conscientious objector claims made after the mailing of an induction notice. United States v. Kroll, Crim. No. 14219, M.D.Pa., June 8, 1967, and cases cited therein, affirmed 400 F.2d 923 (3d Cir. 1968). See United States v. Jennison, 402 F.2d 51 (6th Cir. 1968).

In my opinion, this is certainly the better rule to follow when a registrant claims "crystallization" of his conscientious objector views *subsequent to his indictment.* Palmer v. United States, 401 F.2d 226 (7th Cir. 1968). As the latter Court stated:

"The question for the Court is simply whether at the time of refusal to submit to induction the registrant was under a duty to submit. If he was, a crime was then committed. In dealing with this question the courts do examine into the validity of the order to report and this in turn involves a limited review of past board action in classifying the registrant. These matters bear directly upon the issue of guilt. What occurs after refusal, however, is not relevant to that issue."

■ Accordingly, I hold that the defendant was not entitled to a reopening of his classification pursuant to 32 C.F.R. § 1625.2 for an examination of his post-induction conscientious objector claim.

■ Finally, the question of whether a Local Board waived the applicability of § 1625.2 by permitting a registrant to complete a conscientious objector form has been settled negatively by the Third Circuit. United States v. Kroll, supra. In the case before us, defendant testified that upon inquiry he was told that his second Form 150 was "being considered and had been sent to Harrisburg." The Board Secretary testified that the Board reviewed the Form, but did not consider it and on the advice of the State Selective Service Legal Officer, the Board decided to await a decision by the United States Attorney's office. For the reasons set forth in United States v. Kroll, supra, at 926, I find that no waiver existed in these circumstances and therefore § 1625.2 effectively foreclosed any possible post-induction reclassification of defendant.

### IV. CONSTITUTIONALITY OF THE 1967 MILITARY SELECTIVE SERVICE ACT

In recent correspondence to this Court, defendant's Attorney has raised constitu-

tional issues not presented at the time of trial. With the exception of the recent case of United States v. Sisson, 297 F. Supp. 902 (D.Mass.1969), no Court has held that Congress violated the First Amendment of the Constitution [6] and the Due Process Clause of the Fifth Amendment [7] by creating the classification of conscientious objector based on religious training and belief in Section 6(j) of the Military Selective Service Act of 1967. The very same arguments were presented to the Supreme Court in Seeger, supra, and as both the majority and concurring opinions in that decision indicate, the issues remain with us.

There are, however, at our disposal several recent decisions which do provide some basis for a decision on the merits, viz., Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), and United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). The Epperson case interpreted the First Amendment as follows:

"Government in our democracy, state and national, must be neutral in matters of religious theory, doctrine, and practice. It may not be hostile to any religion or to the advocacy of no-religion; and it may not aid, foster, or promote one religion or religious theory against another or even against the militant opposite. The First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion."

The O'Brien case interpreted Article I, Section 8 of the Constitution,[8] as follows:

"The constitutional power of Congress to raise and support armies and to make all laws necessary and proper to that end is broad and sweeping. Lichter v. United States, 334 U.S. 742, 755–758 [68 S.Ct. 1294, 92 L.Ed. 1694] (1948); Selective Draft Law Cases, 245 U.S. 366 [38 S.Ct. 159, 62 L.Ed. 349] (1918); see also Ex parte Quirin, 317 U.S. 1, 25–26 [63 S.Ct. 1, 87 L.Ed. 3] (1942). The power of Congress to classify and conscript manpower for military service is 'beyond question.' Lichter v. United States, supra, at 756 [68 S.Ct. 1294]; Selective Draft Law Cases, supra. Pursuant to this power, Congress may establish a system of registration for individuals liable for training and service, and may require such individuals within reason to co-operate in the registration system." 391 U.S. 367, 377, 88 S.Ct. 1673, 1679 (1968).

In applying these standards to Section 6(j) of the Act, the thorough discussion of the development of that section by Mr. Justice Clark in the Seeger case is pertinent. Of significant importance is the fact that early in the history of this nation there existed governmental recognition of the moral dilemma posed by a call to arms for persons of certain religious faiths. Seeger 380 U.S. at 170, 85 S.Ct. 850. The ultimate solution developed in the present Section 6(j) of the 1967 Military Selective Service Act.

It must be remembered that not every involvement between religion and the State is unconstitutional. Zorach v. Clauson, 343 U.S. 306, 312, 313, 72 S.Ct. 679, 96 L.Ed. 954 (1952). This is particularly true when the State merely accommodates religious views. Such accommodations are numerous in our society and draft exemptions for ministers and conscientious objectors are prime examples of accommodations with the needs

---

6. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof * * *." U.S.Const. Amend. I.

7. "* * * (n)or (shall a person) be deprived of life, liberty, or property, without due process of law * * *." U.S. Const. Amend. V.

8. "The Congress shall have Power * * *
  (12) To raise and support Armies * * *.
  (18) To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers * * *." U.S.Const. art. I § 8.

of national defense. Abington School District v. Schempp, 374 U.S. 203, 299, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (Brennan, J., concurring). Were the rule otherwise, the very principle of governmental neutrality would be violated for then the standard between the State and religion would be one of hostility. There is no constitutional requirement which makes it necessary for the State to show such "callous indifference" to religion. Zorach v. Clauson, supra. Exemption from military services for conscientious opposition to war in any form based upon religious training and belief appears to be the avenue which Congress thought would give the greatest possible latitude to the free exercise of religion. Since there is no requirement anywhere in the Constitution that a freedom similar to the free exercise clause be afforded the exercise of non-religious beliefs, Congress was in perfect harmony with the spirit of accommodation implicit in the First Amendment when it enacted Section 6(j).

In addition, Congressional refusal to include within this exemption objections founded upon political, sociological or economic reasons is not an impermissible classification under the Fifth Amendment of the Constitution. Seeger recognized that the validity of objections to war based on political, sociological or economic considerations is for the Government to determine and, in such matters, "the conviction of the individual has never been permitted to override that of the state." Seeger 380 U.S., at 173, 85 S.Ct., at 858. Considered in this manner, Section 6(j) is a reasonable and not an invidious classification. I am therefore unable to conclude that this classification established by Congress is so unjustifiable as to be violative of due process. Schneider v. Rusk, 377 U.S. 163, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964); Bolling v. Sharpe, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). Consequently I decline the opportunity to follow the lead of United States v. Sisson, supra, and hold that Section 6(j) does not violate either the First Amendment or the Fifth Amendment of the United States Constitution.

For all of the foregoing reasons, I conclude that defendant, Neal Thomas Neamand, is guilty as charged in the indictment.