**UNITED STATES of America**

v.

**March Wayne GREEN.**

**Crim. No. 71-645.**

United States District Court,
E. D. Pennsylvania.

May 8, 1972.

James Somar, Asst. U. S. Atty., Philadelphia, Pa., for the United States of America.

476

L. George Parry, Philadelphia, Pa., for defendant.

## OPINION AND ORDER

JOHN W. LORD, Jr., Senior District Judge.

Despite the barriers to speedy determination of issues thrown up by the Selective Service System's welter ' of rules and regulations,[1] the issue before us is a simple one: in what year was the defendant subject to induction. Because we find that he was liable in 1971, and his board failed to reach his random sequence number, we find him not guilty of violating 50 U.S.C.A. App. § 462, failure to perform a duty required by the Selective Service Act.

With a system only sightly more advanced than that utilized by President Wilson and Secretary of War Newton D. Baker, the present Selective Service System draws numbers corresponding to birthdates. As must be universally known by this time, if one's number is called, one's number is up, and one either submits to induction or comes into court.

Prior to this litigation, defendant did all that was required of him so that the case might reach its present posture. He registered with Local Board No. 125, Philadelphia, Pennsylvania (hereinafter sometimes the Local Board) on December 6, 1966, as required. His random sequence number was 184. Due to his enrollment at Virginia State College, he was placed in Class II-S (student). On June 8, 1970, the Local Board notified him of his reclassification to I-A, and of his right to a personal appearance and appeal to the State Board, which appeal was requested, in writing, on June 17, 1970. While this was pending, his number was reached; he was ordered to report on January 20, 1971, and this was cancelled by the Local Board on January 26, 1971, because the appeal was then to be (and was) forwarded to the State Appeal Board (Appeal Board). This body again classified him I-A on February 24, 1971, and three days later the Local Board notified the defendant, ordering him to report for induction on April 8, 1971. He failed to obey this order, and on November 15, 1971, a one count indictment was returned against him.

■ The Selective Service System operates, to the extent that it follows the law,[2] under the Code of Federal Regulations.[3] A registrant's primary liability is limited to one year, during which he is classed in the First Priority Selection Group (FPS). 32 C.F.R. § 1631.7(b) (3), (c) (2). If his lottery number is not reached during that year, he is then reassigned to the Second Priority Selection Group (SPS) for the following year. 32 C.F.R. § 1631.7(d) (2). If the number is *then* reached, he is ordered to report for induction, pursuant to 32 C.F.R. § 1631.7(b) (3). Should, however, his number be reached, but he is not called while in the FPS, he is assigned to the Extended Priority Selection Group (EPS) for the following year. 32 C.F.R. § 1631.7(c) (1), (d)

1. The Court notes the fact that despite this maze of regulations and apparently conflicting procedures, the Boards never have the benefit of counsel in conducting their deliberations, and *registrants are specifically forbidden by law from having legal advice during the proceedings which affect them.* See, 32 C.F.R. § 1624.1(b) which provides in part:
 (N)o registrant may be represented before the local board by anyone acting as attorney or legal counsel.

2. See, e. g., Oestereich v. Selective Service System Local Board No. 11, 393 U.S. 233 at 237–238, 89 S.Ct. 414, 21 L.Ed.2d 402

(1966). The local board involved in this proceeding has conducted itself as well as we have found any board to have done, i. e., although its proceedings are shot through with error, they have not directed the error at defendant individually for improper motives. See, c. g., Wolff v. Selective Service Local Board No. 16, 372 F.2d 817 (2nd Cir. 1967).

3. Regulations reasonably adopted to the administration of a congressional act, and not inconsistent with any statute, have the "force and effect of law." G.L. Christian & Associates v. United States, 320 F.2d 345, 350, 160 Ct.Cl. 58 (1963).

(4). His primary vulnerability is thereby extended for three months, and he is subject to call ahead of the members of the FPS for the following year. 32 C.F.R. §§ 1631.7(b) and (b)(2).

The 1970 FPS was defined in the Code of Federal Regulations as follows:

(i) 1970: In the calendar year 1970 nonvolunteers in Class I-A or Class I-A-O born on or after January 1, 1944, and on or before December 31, 1950, who have not attained the 26th anniversary of their dates of their birth. 32 C.F.R. § 1631.7(c)(2)(i).

Defendant's random sequence number of 184 was reached by his local board during 1970, but, because he was not called then he was placed in EPS for 1971, which is defined as:

(1) (R)egistrants who *on December 31 were members of the First Priority Selection Group* whose random sequence number had been reached but who had not been issued orders to report for induction. 32 C.F.R. § 1631.-7(c)(1). (Emphasis supplied)

After the rejection of his appeal (the pendency of which had caused the cancellation of an earlier induction order) he was ordered to report for induction as a member of the 1971 Extended Priority Group.

We find that because of this, he was not in Class I-A on December 31, 1970, as that term is used in the definition of the First Priority Selection Group for 1970. Crowley v. Pierce, No. 71-158-Civ.J., 4 SSLR 3318 (M.D.Fla.1971).

 It is well established by this time that an appeal from the classification of a local board results in a *de novo* classification, independent of that of the local board. This classification supersedes and supplants that of the local board, even if it is the same. 32 C.F.R. § 1626.26; United States v. Pence, 410 F.2d 557 (8th Cir. 1969); DeRemer v. United States, 340 F.2d 712 (8th Cir. 1965). In considering the question of jurisdiction of the board (as to which registration is the one appealed from) "the Courts review the record of the highest body within the Selective Service System which has determined the registrant's classification." United States v. Neamand, 302 F.Supp. 1296, 1301 (M.D.Pa.1969). Here, as in *Neamand*, the highest board was the state of Pennsylvania appeal board.

 As a result, where the Local Board acted in 1970 and the Appeal Board in 1971, defendant was classified I-A in 1971, not 1970. Crowley v. Pierce, *supra*. Accordingly, we find that defendant was not a member of the FPS on December 31, 1970, and was not properly assigned to the EPS for 1971. In addition, the Appeal Board's I-A classification of March Wayne Green in 1971 placed him within the definition of the FPS for 1971, as set forth in 32 C.F.R. § 1631.7(C)(2)(ii), which reads:

1971 and later years. In the calendar year 1971 and each calendar year thereafter . . . nonvolunteers who prior to January 1 of each such calendar year have attained the age of 19 but not of 26 years and who during that year are classified into Class I-A or Class I-A-O.

By definition, therefore, defendant was a member of the FPS for 1971 and was improperly treated as a member of the EPS for that year, the two groups being, of course, mutually exclusive. *See,* Crowley v. Pierce, *supra*.

 The government's answer to all of this is that first the mere calling of a man in a year when he is not liable does not constitute prejudicial error. On the contrary, we hold that extending a man's vulnerability to the perils of the draft by drafting him in the wrong year is thoroughly prejudicial; few things occur to us which could more fully prejudice a man than extending his draft liability.

 The second prosecution point is that the Third Circuit has indicated that it does not agree that a State Appeal Board can cure an error of the Local Board even if one exists. Citing, United States v. Polites, 448 F.2d 1321 (3rd Cir. 1971). Assuming, *arguendo,*

the applicability of a case wherein the local board failed to consider a full hardship record (Polites), to this case, totally without such a record, we find the Circuit's holding in no way contrary to our present position. The government seems to be saying, although nowhere is it spelled out, that if the Local Board is in error, the state board could not cure the error. Or, the government is contending, there was no error on the part of the Local Board, so the defendant had no right to appeal, and the original classification of the Local Board is binding as to year of callability. In either event, the government's position is wrong as to both law and logic.

The government contends also that most cases dealing with *de novo* consideration by appeals boards (some of which we have cited above) were decided prior to the lottery, and the existence of the lottery thereby vitiates all of this case law. We reject this out of hand as absurd.[4]

■ We feel that this would be sufficient to acquit defendant. However, another ground exists. In ordering defendant to report for induction as a member of the EPS, the Local Board failed to follow the order of call prescribed in 32 C.F.R. § 1631.7. Such failure invalidates the induction order of those called out of turn. United States v. Weintraub, 429 F.2d 658 (2nd Cir. 1970), cert. denied, 400 U.S. 1014, 91 S. Ct. 572, 27 L.Ed.2d 627 (1971); Yates v. United States, 404 F.2d 462 (1st Cir. 1968), rehearing denied, 407 F.2d 50 (1st Cir.1969); Lowe v. United States, 389 F.2d 51 (5th Cir.1968).

Even if we were to have found defendant to be a member of the EPS and therefore subject to call during the 1971 induction period, that period ended on April 1, 1971, and defendant was not called until April 8, 1971.

32 C.F.R. § 1631.7(d) (5) provides as follows:

Members of the Extended Priority Selection Group who have not been issued orders to report for induction and originally scheduled for a date prior to April 1 shall forthwith be assigned to the lower priority selection group to which they would have been assigned had they never been assigned to the Extended Priority Selection Group; except that members of the Extended Priority Selection Group who have been ordered to report for induction to fill the last call in the first quarter of the calendar year but who could not be issued orders shall remain in the Extended Priority Selection Group and shall be ordered to report for induction as soon as practicable. Circumstances which would prevent such an order shall include but not be limited to those arising from a personal appearance, appeal, preinduction physical examination, reconsideration, judicial proceeding, or inability of the local board to act.

We do not believe that defendant should have been inducted at all. However, if he should have been, it appears clear from the first clause of the above-cited regulation that he had to be called before April 1, 1971. Instead, he was called eight days later. This extension of liability, as noted *supra,* is prejudicial in that while liability to the draft is a concommitant of living in these times, the law strictly circumscribes how long that liability must continue. Here, a delay of a week (although we note again that no induction order would have been valid) is prejudicial.

While it is not necessary to do so, we feel, for the sake of completeness, that we should discuss the issues raised by the question of extended liability. Under the "last call in the first quarter of

---

4. The government admits, however, that *Crowley* was decided subsequent to the lottery, but that because its holding would preclude a conviction, we should disregard it. This we refuse to do because our independent research convinces us that the Florida court was correct on the law.

the calendar year" mentioned in the Code, this call was scheduled for March 3, 1971. Since defendant's appeal was not completed until February 24, 1971, under the then existing ten day notice rule, he could not be inducted until April 5, 1971, the next induction date. Accordingly, the government has taken the position that the defendant was liable to induction after April 1 since his pending appeal prevented him from being scheduled for induction before that date. 32 C.F.R. § 1631.7(d) (5).

Nevertheless, the term appeal as used in the Regulations to describe a circumstance which would stay an induction order contemplates an appeal processed in a timely manner, and in accord with Selective Service System Regulations. *Cf.* Lawton v. Tarr, 446 F.2d 787 (4th Cir.1971). Defendant's appeal, entered on June 17, 1970, was processed in neither a timely fashion nor in accordance with applicable regulations. Under 32 C.F.R. § 1626.14, the Local Board was required to forward the file for the appeal "immediately", but in no event more than five days after the request for appeal was received. This meant that the appeal had to be forwarded by June 22, 1970. Instead, it was forwarded on January 26, 1971. Lawton v. Tarr, *supra*, held that induction of EPS members after April 1 was permitted only if (1) the local board had proceeded with "reasonable dispatch" to comply with the regulations governing the selection, examination, and induction of registrants, *and* (2) the registrant was inducted as soon as practicable after April 1.

Here, defendant's Local Board certainly did not operate with reasonable dispatch. The regulations set out five days, and the board took more than six months. This violated the command of 32 C.F.R. § 1626.14. This error extended defendant's vulnerability to the draft beyond April 1, and his order to report for induction was issued pursuant to such prejudicial order, and is therefore invalid. *See,* United States v. Freeman, 388 F.2d 246 (7th Cir.1967); Olvera v. United States, 223 F.2d 880 (5th Cir. 1955); and Knox v. United States, 200 F.2d 398 (9th Cir.1952).

Furthermore, it is essential not only to establish the validity of the local board's order, but also to establish the crime of failing to obey that order, that all regulations be scrupulously followed: if they are not, the order is invalid, and there is no crime in not obeying it. Olvera v. United States, *supra*.

This is due to the fact that rules and policies promulgated by administrative agencies are binding on them, and must be observed, even though the rules be a privilege, gratuitously established, rather than constitutionally mandated or established by statute. United States v. Heffner, 420 F.2d 809 (4th Cir.1969); Hammond v. Lenfest, 398 F.2d 705 (2nd Cir.1968); United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir.1969); United States v. Walsh, 279 F.Supp. 115 (D.Mass.1968). These cases, we note in passing, speak also of procedural due process to be fixed upon these agencies through the application of their rules. We have held elsewhere,[5] and think it apparent from a review of the applicable Selective Service Rules and Regulations, that this is a system almost devoid of due process safeguards. Despite this fact, we note that the cases are nonetheless applicable here.

The government cannot meet its subsequent burden under these facts and the law. Where, as here, a violation of procedural due process has been demonstrated, the United States must show beyond a reasonable doubt that the local

---

5. *See,* United States v. Marshall, 340 F. Supp. 117, United States District Court (Eastern District of Pennsylvania), filed March 16, 1972.

**480**

board's failure to process defendant's appeal in accord with Selective Service Regulations did not prejudice him by extending his liability to induction beyond April 1. This it cannot do, because any extension, however slight, completes the act.

The United States has failed to meet this burden. Its position is that the Local Board's error in delaying the appeal entitled the Local Board to extend defendant's primary liability beyond April 1, 1972. To validate defendant's call would be to sanction this arbitrary procedure which violates the Selective Service System's own rules. This we will not do. Hammond v. Lenfest, *supra*; United States v. Heffner, *supra*. A decision in defendant's favor, we feel, would, rather, serve as an incentive to the Selective Service System to abide by and adhere to its own rules and regulations.

As a member of the First Priority Selection Group for 1971, defendant's random sequence number of 184 was not reached by his Local Board in 1971. As a result, his prime vulnerability to induction terminated on December 31, 1971, and at that time he moved into the Second Priority Selection Group for 1972. 32 C.F.R. § 1631.7(d) (2). Assuming, *arguendo*, that defendant was properly a member of the EPS for 1971, he was not ordered to report for induction while a member of this group. 32 C.F.R. § 1631.7(d) (5). On April 1, 1971, he moved into the Second Priority Selection Group for 1971. 32 C.F.R. § 1631.7(d) (2). On December 31, 1971, he moved into the Third Priority Selection Group for 1972. 32 C.F.R. § 1631.-7(d) (3). There can be no conviction on these facts.

The Court wishes to extend its special appreciation to Lloyd George Parry, Esq., of the Philadelphia Bar, who served as defendant's court appointed counsel, and whose presentation and learned brief were of great assistance to the Court.