## G. S. & C. DRILLING CO. et al. v. PENNINGTON et al.

No. 21839. Opinion Filed April 28, 1931.

Withdrawn, Corrected, and Refiled, and Rehearing Denied July 28, 1931.

Ames, Cochran, Ames & Monnet, for petitioners.

J. M. Siler and M. J. Parmenter, for respondent Dick Pennington.

CLARK, V. C. J. This is an original proceeding in this court to review an award of the Industrial Commission made and entered on the 23rd day of September, 1930, wherein the Industrial Commission found that Dick Pennington had sustained an accidental personal injury, on October 4, 1926, while in the employment of G. S. & C. Drilling Company, while in the course of his employment, and that as a result of said accident, claimant was disabled from performing manual labor from the date of the accident to May 11, 1929; and that by reason of said accidental injury claimant also sustained 60 per cent. permanent partial loss of the use of his right arm, and that the average daily wage of the claimant at the time of said injury was $7, and that the claimant was entitled to 136 weeks' temporary total disability, and in addition thereto 150 weeks' compensation on account of 60 per cent. permanent partial loss of the use of his right arm.

The record in this case discloses that employer's first notice of injury was filed with the Commission on October 18, 1926, and that thereafter and on the 27th day of August, 1928, there was filed with the Industrial Commission an agreed statement of facts as provided in section 7294, C. O.

S. 1921, which agreed statement of facts was filed with the Industrial Commission, and also a receipt for the total sum of $2,-245.87, on account of disability resulting from said injury. This agreed statement of facts was marked "Approved F. L. R."

The testimony discloses that the respondent, Dick Pennington, while in the employ of the G. S. C. Drilling Company, on the 4th day of October, 1926, sustained an accidental personal injury arising out of and in the course of his employment, consisting of a fracture of the right arm above the elbow, by getting his right arm caught in a cat-head. His arm was badly fractured. He was seen by Dr. Baxter on the 5th day of October, 1926, who set his arm, and it stayed in a cast for about three weeks, and when the cast was taken off the bone was loose and apparently no union was obtained, and there were two running sores. In February, 1927, he was seen by Dr. Cunningham, who testified, in substance, as follows:

"He came in to me with a nonunion, or rather a bone defect of the right humerous, about four inches or five inches above the elbow, with nonunion, and an injury to the radial nerve that contributed to his hand. This defect in the bone, which was rather wide, we fixed by placing in a bone splint, and secured firm bony union. * * * Following the operation, the nerve was repaired, which corrected the defect in the motor action of the muscles of the back of the hand and wrist. We treated him until August 28th, at which time he was dismissed to return to work. At that time, my report to his employer read as follows: 'We have now had Dick Pennington under treatment since February, 1927. I last examined him on August 22. There has been practically no change in the condition of the arm and hand since I examined him in March. The hand grasp is fairly good and he has some callouses now in both hands, which indicates he is using both hands. Because of the partial ankylosis in the elbow and the extensive destruction of the muscle tissue in the upper arm I think he is entitled to 50 per cent. loss in function of his arm, although it may not impair the use of his arm as a day laborer.' "

He further testified at the hearing on September 9, 1930, that he examined his arm on the 8th day of September, 1930, the day before the hearing, and that claimant had a slight limit in extension at the elbow; deep adhesive scars at the point of injury; and that he thought he had more than the average range of movements in all joints.

Dr. W. K. West, a bone and joint specialist, testified that he examined claimant on the 8th day of September, 1930, and that claimant had limitation of motion in

elbow joint about 30 per cent. in extension and about five or ten per cent. flexion; 20 per cent. interference with elevation. Marked destruction of the muscle in the muscle group that binds the arm. That the bone was about one inch short.

Dr. C. D. Moore testified he examined the claimant on September 1st, and described the condition of the arm, and he estimated the disability at approximately 75 per cent. and that there will be no improvement and possibly become worse.

Dr. Walden testified he examined the claimant on September 6, 1930; and described the condition of the arm, and that claimant had an impairment of 75 per cent. of the use thereof.

The respondent, Pennington, testified that he returned to work in June, 1929, and that after about a month it got weaker, and the elbow joint became sore and gave out on him, and that he was unable to use his arm for more than two to four hours at a time; that his arm is not in the same condition as it was when he went to work, not as strong; that he was unable to work during the period from March 1, 1929, to the 18th day of June, 1929, the period when he was not paid any compensation; that his arm is not as strong now as in August when he signed the stipulation; that it is sore in the joint.

The testimony clearly shows a change in condition from that at the time the stipulation was signed, which was not approved. However, it is immaterial whether the stipulation had or had not been approved. If the stipulation was approved and award made thereon it would have no more binding force and effect than an award made on a hearing after the taking of testimony, and there being a change in condition subsequent to the stipulation, it was not error for the Commission to award the claimant additional compensation.

Petitioners contend first:

That the agreed statement of facts as evidenced on Form 7, signed by all the parties and approved by the Commission, was final as to all matters embraced therein, in the absence of fraud or change in conditions, and the Commission erred in increasing the percentage of permanent partial loss.

The percentage agreed on at the time the stipulation or Form 7 was signed showed a 50 per cent. permanent partial loss, and the testimony at this hearing discloses 75 per cent. permanent partial loss for the use of the arm, which was a marked change in condition; which, under any theory of the case, whether the stipulation was approved or not approved, would permit the Commission, either on its own motion or motion of the claimant below, respondent here, to reopen the said cause and make an additional award.

This court held in St. Joseph Mining Co. et al. v. Pettitt et al., 90 Okla. 242, 216 Pac. 657, that an award made on a stipulation of facts has the same force and effect as an award made upon a hearing and may be reviewed under section 7296, C. O. S. 1921.

It is next contended that there was no competent evidence to support the award of the Commission allowing the claimant for temporary total disability 136 weeks. With this contention we cannot agree. The finding of the temporary total disability was a finding of fact by the Commission, and there is ample evidence in the record to support such finding, and under the well-established rule the same will not be disturbed by this court on review. Judgment and award is affirmed.

LESTER, C. J., and HEFNER, CULLISON, SWINDALL, and McNEILL, JJ., concur.

RILEY, J., dissenting.

ANDREWS, J., concurs in conclusion.

RILEY, J. (dissenting). Prior to withdrawal and correction, paragraph 1 of the syllabus of the majority opinion stated: "An agreed statement of facts provided for in section 7294, C. O. S. 1921, as amended by chapter 61, S. L. 1923, before the same is effective, must be approved by the State Industrial Commission by majority of the Commission, as provided in section 7315, C. O. S. 1921." Whereas, in Marland Pro. Co. et al. v. Hogan et al., 146 Okla. 220, 294 P. 115, this court held that where an agreed statement of facts provided for in section 7294, C. O. S. 1921, was entered into, in the absence of fraud, "it shall be binding on the parties," and where "no notice of disapproval was given by the Commission, and under rule 31 of the Commission, in the absence of notice of the Commission's disapproval within five days after filing of the stipulation and receipt, the same shall be considered approved."

It is my opinion that these decisions are in conflict. In the last-cited case it was held that "it was the legislative intent that the Commission have a continuing power and jurisdiction to review its award on the ground of a change in condition only and, except for a change in condition, the award is final and conclusive upon all questions

within its jurisdiction." The final award in the case at bar does not purport to be one upon a change in condition, but, on the contrary, appears to be one as though no former award had been made.

The agreement and settlement approved by the Commission "has the same force and effect as an order and award by the Commission." Pickering Lbr. Co. v. Campbell, 147 Okla. 158, 295 P. 596.

We should assume that the Commission did its duty in approving the settlement. Indus. Comm. v. Big Six Coal Co. (Colo.) 211 Pac. 361; Groveland Coal Mining Co. v. Ind. Comm. (Ill.) 140 N. E. 24; Hackey-Phelps-Bonnell Co. v. Indus. Comm. (Wis.) 179 N. W. 590; Hartford Accident & Indus. Co. v. St. Ind. Comm., 87 Okla. 180, 209 Pac. 775 (wherein the court held, "the presumption is that the Commission in making its award proceeded in accordance with the law"); Liddle v. Dept. of Labor & Ind. (Wash.) 255 Pac. 385.

The agreement and settlement in this case is either valid or invalid. I do not agree with the view of the majority that its validity is immaterial. If the agreement is a nullity, then the claimant has not filed a claim within one year as required by section 7301, C. O. S. 1921. Nor is there any substitute for a claim, nor has the Commission found facts sufficient to toll the statute of limitation if the same be not considered as a limitation on the right.

If the agreement be held valid (contrary to the view of the majority), then the burden is upon the claimant to show a change in condition subsequent to the settlement "approved August 28, 1928, St. Indus. Comm." (p. 6 R.) in the amount of $2,245.-87, based upon the agreement as to the "nature of injury" and "extent of disability" resulting from the "injury occurred October 4, 1928."

My examination of the record convinces me that claimant did not so establish such a change in condition, neither did the Commission so find.

The claimant testified (R. p. 21):

"Q. What change did you notice in your arm between the time this stipulation and receipt was signed to the next two or three months? A. Not any. Q. None at all. A. No, sir. * * * Q. When did you first attempt to get employment? A. In June. Q. In June, nearly a year later, from August, 1928, you had not attempted to work? A. No. Q. Now, at the time you returned to work, was your arm better than it was in August, the last time Dr. Cunningham saw

you? A. It had filled out in there. It was a little stouter."

Dr. C. D. Moore testified (R. 26) as to the relative condition of the injury on the date of last hearing with that of August, 1928: "He would approximately be in the same condition then, with reference to strength, as he is at this time."

Dr. Cunningham testified (R. p. 29): "Well he had had a gradual improvement since that time August, 1928."

Dr. West testified (R. p. 32) as to change in condition, "Well, my opinion is that there has been practically no difference, * * *" and that 50 per cent. loss of use of the arm was a liberal estimate. That was the percentage allowed in the settlement agreement.

While Dr. Walden testified there was 75 per cent. disability, he did not testify there had been a change in condition since the settlement.

I have referred to each witness who testified in the hearing, and I am unable to find evidence that would warrant a finding of changed condition.