**SPECIAL INDEMNITY FUND, Petitioner,**

**v.**

**David Earle LEE and the State Industrial Court, Respondents.**

**No. 47464.**

Supreme Court of Oklahoma.

Jan. 27, 1976.

As Amended May 5, 1976.

Rehearing Denied June 8, 1976.

Sam Hill, Mary Elizabeth Cox, Oklahoma City, for petitioner.

E. W. Keller, Keller & Fernald, Oklahoma City, for respondent, David Earle Lee.

LAVENDER, Justice:

Petitioner, hereafter designated the Fund, brings this proceeding for review to vacate a State Industrial Court en banc order, which modified a trial judge's order, fixing the amount of deduction from award for total disability by reason of claimant's prior physical impairment. The only issue presents a question of the correct deduction to be made for that disability that constituted an injured workman a physically impaired person under 85 O.S. 1971 §§ 171, 172.

Claimant sustained accidental personal injury (June 9, 1972) causing industrial

blindness (20/400) of the right eye, without hope for visual improvement. The parties stipulated the claimant was a physically impaired person, within definition of § 171, supra, having been blinded in the left eye from a childhood accident in 1936. Claim for the last injury was settled by the employer under joint petition settlement, with claimant reserving rights against the Fund.

The trial judge found combination of the last injury with disability from prior physical impairment had resulted in 100% disability to the body as a whole which entitled claimant to 500 weeks compensation. That finding is not controverted.

Effective October 1, 1971, the schedule of compensation for permanent partial disability resulting from loss of an eye was increased from 100 weeks to 200 weeks. § 22(3). As required by *Special Indemnity Fund v. Corter*, Okl., 389 P.2d 478 (1964), the trial judge deducted from the 500 weeks the award for the last injury standing alone (industrial blindness of the right eye) and the percentage of disability constituting claimant a previously impaired person. The deduction for the last injury was 200 weeks. There is no dispute as to that. The deduction for the previous impairment was 200 weeks. It is the amount of this deduction that is disputed in this appeal. An award for 100 weeks compensation was entered against Fund, representing 20% increase of disability from combination of injuries.

On en banc appeal, the trial judge's order was modified by reducing the deduction for the previous impairment to 100 weeks. This increased the award entered against Fund to 200 weeks compensation, representing 40% increase of disability from combination of injuries. The trial judge dissented to this adjudication, stating the award was governed by the schedule effective on the date claimant had a combinable injury.

Section 172 provides in part:

"If an employee who is a 'physically impaired person' receives an accidental personal injury compensable under the Workmen's Compensation Law which results in additional permanent disability so that the degree of disability caused by the combination of both disabilities is materially greater than that which would have resulted from the subsequent injury alone, the employee shall receive compensation on the basis of such combined disabilities, as is now provided by the laws of this state. If such combined disabilities constitute partial permanent disability or permanent total disability, *as new defined* by the Workmen's Compensation Laws of this state, then such employee shall receive full compensation *as now provided* by law for the disability resulting directly and specifically from such subsequent injury, and in addition thereto such employee shall receive full compensation for his combined disability as above defined, after deducting therefrom the percent of that disability that constituted the employee a 'physically impaired person,' as defined herein, all of *which shall be computed upon the schedule and provision of the Workmen's Compensation Law of this state.* Provided the employer shall be liable only for the degree of percent of disability which would have resulted from the latter injury if there had been no pre-existing impairment." (Footnote deleted. Emphasis supplied.)

"The object of interpretation is to reach the true intent and meaning of the Legislature. * * * Legislative intent may not be ascertained by words alone, but all provisions of a statute are to be taken as a whole, so each provision will harmonize with every other, and *remedial purposes of the law preserved.*" (Emphasis added.) *Becknell v. State Industrial Court*, Okl., 512 P.2d 1180 (1973).

█ The Special Indemnity Fund Act [1] is not amendatory of the Workmen's Com-

1. Now cited as 85 O.S.1971 § 171 et seq., as amended Laws 1972, 1973 and 1975.

pensation Law. It is supplementary thereto; remedial in character; and to be liberally constructed, if necessary, to give effect to the intended purpose of the legislature. The legislature intended to relieve against the inability of many, otherwise employables, who suffered previous impairment to obtain work in industry covered by the Workmen's Compensation Law. *Special Indemnity Fund of Oklahoma v. Wade*, 199 Okl. 547, 189 P.2d 609, 610 (1948). It limits the liability of the employer of a physically impaired person, as defined, to the degree of percent of disability resulting from the latter injury as if there had been no pre-existing impairment. § 172. This makes the physically impaired person more employable. By the required statutory deductions, the Fund's liability is limited to the present percentage of disability less the instant injury standing alone and less the pre-existing disability. These two mandatory deductions make the fund liable only for the increased disability caused by, but not including, the prior disability. The percent of that prior disability, which *constituted* the employee a "physically impaired person" is computed upon the schedule of the Workmen's Compensation Law of this state. § 172.

The Fund argues, in determining the number of weeks to be deducted as to the percentage of disability constituting previous impairment, the schedule in effect at the time of the last injury controls; or stated otherwise, the law or schedule "now" in effect controls. It cites *Special Indemnity Fund v. Michaud*, Okl., 345 P.2d 891 (1959); *General Electric Company v. Folsom*, Okl., 332 P.2d 950 (1958); *Caswell v. Bird*, 160 Okl. 224, 16 P.2d 859 (1932), and *United Iron Workers v. Smethers*, 159 Okl. 105, 14 P.2d 380 (1932). These decisions generally hold the provisions of the Workmen's Compensation Law in force at the time of the injury controls. These cited cases do not involve the Special Indemnity Fund Act except *Michaud, supra.* There Michaud was determined not to be a physically impaired person, for compensation purposes. His impairment of deafness, resulting from a prior ear accident, was not included in the compensation schedules either expressly or as "one of the members" at that time. These cited cases are not dispositive of the issue here for no physically impaired person for compensation purposes was involved in them. Their holdings could not affect and carry out the legislative intent of making a physically impaired person more employable.

In *Nease v. Hughes Stone Co.*, 114 Okl. 170, 244 P. 778 (1926), this court first declared an employee who previously had lost sight of one eye, and suffered further injury destroying his remaining sight, to be totally disabled and entitled to compensazion for permanent total disability. In the rationale of that holding, (p. 780) we said, in part:

"When Nease entered the service of his employer he had but one sound eye, and the employer and the insurer must have known this. He was presumably paid the wages which a man in that impaired condition was worth in that service. * * * Nease's weekly wages were doubtless reduced accordingly, so that at the time of his last injury he was receiving as wages only such wages as he was entitled to owing to his impaired capacity when he entered the service of his employer. He had that degree of capacity which enabled him to work for which he was hired. That was his capacity. It was an impaired capacity as compared with the normal capacity of a healthy man possessing all of his faculties. But, nevertheless, it was the employee's capacity, and it enabled him to earn the wages which he received, and his compensation is fixed and based on that capacity and ability to earn wages; * * *."

Here claimant was a physically impaired person prior to entering employment and, therefore, had a limited capacity for work as compared to nonphysically impaired workman. But claimant was possessed of

that degree of capacity which enabled him to perform duties for which employed, and to receive the wages a man in his impaired condition was worth in that particular employment. The degree of physical incapacity claimant suffered upon reaching adulthood was neither greater nor less than when employment began. The capacity for work which was totally destroyed by the last accident was the same capacity which existed prior to employment.

 Application of the schedule of compensation, § 22(3), as amended, here would retroactively affect the percent of impairment incurred prior to amendment. The claimant, as an impaired person, would be penalized by changing the degree of incapacity which dictated the service which could be performed when employed. We are of the opinion this result was not intended by the legislature. The Special Indemnity Fund Act, enacted to promote public, social and industrial welfare, is remedial in nature and requires liberal construction. *Cameron & Henderson v. Franks*, 199 Okl. 143, 184 P.2d 965. We believe legislative intent concerning application of the Act is best served by holding the percentage deduction for disability, that constituted an employee a 'physically impaired' person, must be computed under the schedule in effect at the time claimant's first employment occurred. Here claimant was a physically impaired person when employed. The schedule in effect at the date of first employment controls for the purpose of calculating deduction for physical impairment, and not the schedule in effect at the time of second injury. Medical report of Dr. C., placed in evidence without objection, showed claimant's first employment occurred several years prior to last injury, and before amendment of § 22(3), which increased deduction for loss of an eye from 100 weeks to 200 weeks.

We do not have before us the issue as the schedule to be applied for this deduction when the claimant suffered the first or prior disability allowing him to be classified as a physically impaired person after the employment in which the second or last injury occurred. We make no holding under those circumstances.

Award sustained.

WILLIAMS, C. J., HODGES, V. C. J., and BERRY, BARNES and DOOLIN, JJ., concur.

DAVISON and SIMMS, JJ., concur in result.