**SPECIAL INDEMNITY
FUND, Petitioner,**

v.

**Mary Ann WASHBURN and the
Workers' Compensation Court,
Respondents.**

**No. 61517.**

Supreme Court of Oklahoma.

July 22, 1986.

Mark Alan Shores, Baum & Ralstin, Oklahoma City, for petitioner.

Sam Hill, Robert Highsaw, Oklahoma City, for respondents.

SUMMERS, Justice.

This case involves a physically impaired person and the Special Indemnity Fund, created and controlled by 85 O.S.1981 §§ 171–176. The extent of the person's previous impairment being a factor in determining the fund's contribution, this ap-

peal requires that we determine how to assess this factor.

The issue to be resolved is whether in assessing the degree of a physically impaired person's previous disability for purposes of determining the contribution of the Special Indemnity Fund, does the Workers' Compensation Court make this assessment as a factual matter based on the evidence, or is the court bound to make the assessment by applying whatever schedule of compensation was in effect at the time of the hiring? The trial judge and review panel held that it can make the assessment as a factual matter based on the evidence. The Court of Appeals held that the trial court is bound to make the assessment by applying whatever schedule of compensation was in effect at the time of the hiring.

The claimant/respondent was a physically impaired person due to total blindness since infancy. She held a full-time job as a dictation transcriber at St. Anthony's Hospital. She had worked there six years when she sustained a work-connected injury to her ears and jaws. Considering her claim under 85 O.S.1981 § 172, the trial court applied the following formula: Total disability resulting from combined disabilities *less* disability due to the subsequent injury (paid by employer) *less* degree of prior disability *equals* the amount paid by the Fund. The trial tribunal found the combination of injuries had resulted in 100 percent permanent disability which translates into 500 weeks of compensation. Subtracted from that were 200 weeks attributable to the present injury and payable by the employer. As for the claimant's previous disability due to her blindness, the trial judge assessed it at 40 percent, which translates into 200 weeks, and that figure was also subtracted from the 100 percent disability figure. After these two deductions, there were 100 weeks left, and for that the Fund was held responsible.

The three-judge review panel affirmed the trial court on appeal. On review by the Court of Appeals, however, the lower court's assessment was reversed. The Court of Appeal's opinion found that the trial judge did not have the leeway to assess the variable of the claimant's previous disability on the evidence as a question of fact. Rather, the court held that the assessment had to be based on the schedule of compensation in 85 O.S. § 22 for eyes at the time the claimant was hired. That came to 200 weeks an eye, or a total of 400 weeks. When 400 weeks rather than 200 weeks is plugged into the formula, 500 (total combined) minus 200 (current injuries) minus 400 (prior disability), the remainder is a negative number so that the Fund would not be responsible for any of this claim. The claimant sought certiorari with this court which was granted to review the Court of Appeals opinion.

In 85 O.S.1981 § 171 there are two classes of employees defined as physically impaired. Those with injuries that are "obvious and apparent from observation or examination by an ordinary layman" and those with "any disability which previously has been adjudged and determined".

In reaching its holding, the Court of Appeals stressed certain language in Section 172. This section, both in discussing claimants who have been partially disabled and claimants who have been totally disabled, specifies that physically impaired employees who are subsequently injured on the job shall receive full compensation for their combined disabilities, "all of which shall be computed upon the schedule and provisions of the Workers' Compensation Act". The Court of Appeals construed the Section 172B phrase to require the trial court to assess the claimant's previous disability under the Section 22 schedule, resulting in a degree of disability double that which the trial court found on the evidence as a matter of fact. When placed in context, this language of § 172 states the process of translating degrees of disabilities into weeks of compensation as allowed by the Act and at rates specified by the Act. This language need not be construed so that degrees of disability themselves—the three variables of present combined disability,

current injury, and previous disability—are not questions of fact.

The Court of Appeals relied upon *Special Indemnity Fund v. Lee*, 550 P.2d 568 (Okl. 1976) in which the claimant was a physically impaired person due to blindness in one eye since childhood. The only question in that case was which schedule would apply, the one in effect at the time of the hiring, or the one in effect at the time of the subsequent injury. The court held that the time of hiring was the pertinent date. This case does not preclude the degrees of disability from being questions of fact.

Since *Lee*, a very different course has been charted by this court. We have held that the degree of prior disability is to be figured on the date of the subsequent injury, not on the date of the hiring. In addition, the degree of prior disability is to be considered a fact question to be determined on the evidence. *Special Indemnity Fund v. Doughty*, 558 P.2d 396 (Okl.1976). In that case we stated:

"There is no statutory provision which would require the State Industrial Court to give conclusive weight to the prior adjudication of the percentage of permanent disability. On the contrary, this prior adjudication constitutes only prima facie evidence that claimant is a 'physically impaired person'.

The extent of claimant's previous permanent disability at the time of September, 1973, injury was a factual issue to be resolved by the State Industrial Court. Competent medical evidence was admitted to support claimant's percentage of recovery from his prior injury." Id. at 397.

In *J.C. Penney Co. v. Crumby*, 584 P.2d 1325 (Okl.1978), we held that the degree of disability on the date of the subsequent injury was what mattered, not the degree of disability at the time of the hiring. Again, as in *Doughty*, a prior adjudication of a certain percentage of disability was considered relevant but not conclusive.

In *Sears, Roebuck & Co. v. Tatum*, 586 P.2d 734 (Okl.1978), there was a problem in that a previous adjudication of five percent

permanent disability had not been taken into account in a claim for a subsequent injury. The case was remanded for a factual determination of "the degree, if any, of permanent partial disability ... the claimant was experiencing at the date of the injury covered in this proceeding". Again, the date of the subsequent injury is the pertinent date, and the degree of previous disability is considered a factual question requiring a determination on the evidence.

In *Lincoln Rock Corp. v. Voyles*, 590 P.2d 186 (Okl.1979), this court reiterated its view that the percentage of disability previously set "did not establish [claimant's] degree of disability at the time he sustained the [subsequent] injury". We stated that this "material issue in determining claimant's claim was something that required a factual finding derived from an examination of the evidence." In *B.F. Goodrich v. Frost*, 630 P.2d 321 (Okl.1981), this court reaffirmed *Voyles*, but noted that there was often a proof problem over this factual question. Accordingly, the court created a rebuttable presumption that a previous impairment had not changed since the last adjudication.

The Court of Appeals recognized the *Frost*, *Crumby*, and *Doughty*, decisions, but distinguished them on the ground that the present case dealt with a previous injury to a scheduled member, the eyes, whereas these other cases dealt with disabilities of the whole body. This distinction however, is not a material distinction. In *Crumby*, the claimant argued that she should not be found previously disabled at all because her prior disability was to a different part of her body than the subsequent injury. This court held that this distinction was "immaterial", because § 172 "makes no distinction between a subsequent injury to the same part of the body for which a previous award to the body as a whole has been made, and a subsequent injury to another part of the body".

There is a distinction between *Lee* and *Doughty*, *Crumby*, *Tatum*, *Voyles* and *Frost*. In *Lee*, as in the instant case, the

claimant fell into the category of physically impaired persons of "obvious and apparent" disabilities, whereas the five cases since *Lee* involve claimants in the category of physically impaired persons by virtue of previous adjudicated injuries. If *Lee* is allowed to stand distinguished from these other five cases and combined with the Court of Appeals opinion upon review, we will have two different rules for the two categories of previously impaired persons. For those with previously adjudicated disabilities, we treat their degree of prior disability as a fact question to be resolved on the evidence with the aid of a rebuttable presumption that the degree has not changed since the last adjudication. And, the assessment of prior disability is to be determined from the date of subsequent injury, and not the date of hiring. When dealing with this group, the trial court has some discretion. The degree of prior disability can be adjusted either upward or downward depending on the facts and circumstances as presented by the evidence. In *Doughty*, for example, the trial judge after hearing all the evidence, had the leeway to find that the claimant had recovered considerably, reducing his prior disability from 100 percent to 60 percent.

By contrast under *Lee*, for those who came to work, not with an adjudicated disability, but with an obvious and apparent disability, at least for those with disabilities of scheduled members, the degree of their prior disability is not treated as a normal fact question. Rather, the trial judge is bound to follow the Section 22 schedule regardless of whether or not it coincides with the actual degree of prior disabilities shown by the evidence. Also, for this group the trial court would assess prior disability from a different date, the date of hiring as opposed to the date of subsequent injury.

Also, the Workers' Compensation Court now treats the question of whether the disability itself is obvious and apparent as a question of fact. *Special Indemnity Fund v. Scott*, 652 P.2d 278 (Okl.1982). However, when it comes to assessing the degree of prior disability, if *Lee* and the Court of Appeals opinion is followed, the trial judge could not assess prior disability based on the evidence. The Court of Appeals held in its opinion that it could not be considered that the claimant had been blind for as long as she could remember and seemed to have adjusted remarkably well. Whereas, in *Doughty*, an adjustment of a much shorter duration was held to have a decisive bearing on the degree of prior disability. In the instant case if the Court of Appeals is followed, the trial court could not take a lifetime of adjustment into account.

■ We find that to treat differently the two classes of employees defined in 85 O.S.1981 § 171 as physically impaired persons would be a denial of substantial justice and fair play. We think the better course is that followed in *Voyles* and *Frost*. We hold therefore that for that class of people defined in Section 171 as physically impaired persons as those with injuries that are obvious and apparent from observation and examination by an ordinary layman, their previous disability is a material issue in determining their claim, and is something that requires a factual finding derived from an examination of the evidence. This determination should be made as of the date of the injury and not the date of hiring. This ruling will affect only the degree of *prior* disability attaching to the claimant and will have no bearing upon the degree of disability for the *subsequent* injury for which the employer is accountable. Insofar as *Special Indemnity Fund v. Lee*, supra, is in conflict with this decision it is overruled.

Finally, petitioner Fund asserts that because of claimant's previous blindness, she was permanently and totally disabled prior to the time of her latest injury in 1978, and therefore, must be precluded from receiving any additional compensation from the Fund. For support Fund cites 85 O.S.1971 § 22(1), which reads in part:

"Loss of ... both eyes ... shall in the absence of conclusive proof to the con-

trary, constitute permanent total disability."

Fund argues that since claimant was performing clerical work as opposed to ordinary manual labor at the time of her injury she did not present conclusive proof to rebut the statutory presumption that she was totally and permanently disabled for the performance of ordinary manual labor before her latest injury.

Although we have employed the standard of whether an individual was able to perform ordinary manual or mechanical labor, this standard has used earning capacity as one of the criteria. In *Dierks Lumber and Coal Co. v. Lindley*, 77 P.2d 44, 46 (Okl.1938) this court stated:

"Ordinarily a disability cannot be classified as total under the Workmen's Compensation Law ... where the *earning power* of the employee is not wholly destroyed and *capacity to perform remunerative employment remains....*" (emphasis added)

"A total permanent disability within the terms of the Workmen's Compensation Law is not synonymous with total incapacity or total dependence, but means a lack of ability to follow continuously *some substantially gainful occupation* without serious discomfort or pain and without material injury to health or danger to life." (emphasis added)

■ See also *McClure v. Special Indemnity Fund*, 475 P.2d 811 (Okl.1970); *Okla. Gas & Elec. Co. v. Hardy*, 67 P.2d 445 (Okl.1937).

In summary, total permanent disability constitutes a lack of ability to perform substantially gainful employment without injury to health or serious discomfort. In *Standard Testing and Ins. Co. v. Bradshaw*, 442 P.2d 337 (Okl.1968) we stated:

"The question of a man's permanent disability is not to be determined solely by technical formulas defining percentages of disability but is dependent to a large extent on the ability of the individual to perform continuously some substantially gainful occupation notwithstanding his disability."

■ Under the evidence in this case and under the existing case law we concur with the conclusion of the Court of Appeals with respect to this proposition in error. The Court of Appeals stated in its opinion

"In the present case the evidence is undisputed that claimant prior to her 1978 on-the-job injury was able to work eight or more hours a day notwithstanding her previous absence of vision. Pursuant to the above authority we deem it irrelevant that claimant was performing clerical work rather than manual labor as claimant was able to earn a living and pursue gainful employment which would preclude claimant from coming within the definition of total permanent disability."

Fund urges that claimant's clerical job was non-hazardous and therefore was no proof contrary to the presumption of total permanent disability. But 85 O.S.1981 § 65.2 brings an estoppel into play. It provides:

"Every employer and every insurance carrier who schedules any employee as a person employed by the employer for the purpose of paying or collecting insurance premiums on a Workmen's Compensation insurance policy or who pays, receives or collects any premiums upon any insurance policy covering the liability of such employer under the Workmen's Compensation laws by reason of or upon the basis of the employment of any such employee shall be estopped to deny that such an employee was employed by the employer in the hazardous employment subject to and covered by the Workmen's Compensation law...."

In *Special Indemnity Fund v. Acuff*, 383 P.2d 630, 633–634 (Okl.1963) we stated:

"An award of the State Industrial Court made upon the stipulation of facts has the same force and effect as an award entered upon an adversary hearing. Such award, when final, becomes binding and conclusive not only from the parties but also upon the State Industrial Court." *Cavender v. Wofford Drilling Co.*, 190 Okl. 291, 123 P.2d 261; *G.S. &*

**1210**

C. Drilling Co. v. Pennington, 151 Okl. 61, 1 P.2d 764.

■ Here the employer and employer's insurance company entered into a pretrial stipulation wherein the employer and employer's insurance company admitted that, although the claimant's employment was not hazardous as defined by the Workmen's Compensation Act, they were nevertheless estopped to deny liability. Although a judicial determination may not be binding or conclusive on a third person, nevertheless it may be admissible against him to prove prima facie the fact of its rendition or entry and the legal consequences resulting therefrom in the absence of any evidence to the contrary. *Mechanics' and Traders' Ins. Co. of New Orleans v. Local Building and Loan Association,* 128 Okl. 71, 261 Pac. 170 (1927). In *Fund v. Acuff,* supra, we further stated:

> "We hold that if an award is made against the last employer on a properly approved stipulation, such award may be considered in a subsequent proceeding against the Special Indemnity Fund as establishing prima facie claimant's right to compensation for permanent disability from an accidental injury sustained in course of hazardous employment." (Id. at 634)

■ The legislative establishment of the Fund was supplementary to the Workmen's Compensation Act, and provided a means by which physically impaired employees might receive compensation for combined disability in accordance with existing compensation laws of the state. 85 O.S.1981 §§ 171–175. *Special Indemnity Fund v. Barnes,* 434 P.2d 218 (Okl.1967). The liability of the Fund is purely derivative from the original award against the claimant's employer. *Special Indemnity Fund v. Mickey,* 563 P.2d 123 (Okl.1977). Here we have a stipulation by the employer and its insurance carrier that although the employment was not hazardous they were estopped to deny liability. The stipulation would also operate to estop the Fund from denying its liability.

The petition for rehearing in the Court of Appeals was filed twenty-one (21) days from the date of its opinion, and was dismissed in that Court. The question has been raised whether or not this court could thus grant certiorari. Rule 3.9 of the Rules for the Court of Appeals covers petitions for rehearing. The version in effect at the time the petition for rehearing was filed is as follows:

> "A party who is aggrieved by a decision of the Court of Appeals may file one petition for rehearing combined with a brief in its support. On good cause being shown, a party may be allowed to supplement the brief on rehearing, but not more than one petition for rehearing may be presented by any party. The time for filing the petition for rehearing shall be the time as that prescribed for filing a petition for a rehearing in the Supreme Court. See Rule 28, Rules of the Supreme Court Title 12, Chapter 15, App. Oklahoma Statutes. The time shall run from the date the opinion is filed."

■ Rule 28 above mentioned requires that the petition for rehearing be filed twenty (20) days from the date the opinion is filed. Rule 3.9 has since been amended with the following addition.

> "An application for an extension of time not to exceed twenty (20) days to file a petition for rehearing and a brief in support thereof may, if filed within the time limits provided by said Rule 28, Rules of the Supreme Court, be allowed by the Presiding Judge of the Division of the Court of Appeals involved, if within the judge's opinion good cause is shown in the application for an extension."

This amendment to Rule 3.9 allowing for an extension of time for good cause shown is indicative that the twenty (20) day requirement is not jurisdictional. If jurisdictional, the extension of time would not be permissible.

Exclusion of a petition for certiorari in this case would be predicated on Rule 3.13(B) which states:

"A party who did not petition for rehearing in the Court of Appeals may not petition for certiorari."

■ The party who fails to file a petition for rehearing in the Court of Appeals (whether timely or untimely) may not petition for certiorari. Here a petition for rehearing was filed in the Court of Appeals. Therefore, Rule 3.13(B) would not exclude the petition for certiorari in this case.

In further support of this interpretation of Rule 3.13(B) the Supreme Court has revised Rule 3.14 covering the petition for certiorari and its content. The pertinent part in respect to this issue is Subsection G which reads as follows:

"The petition for certiorari shall be filed with the clerk of the Supreme Court within twenty (20) days from the date the order either denying or *dismissing* a petition for rehearing was filed by the Court of Appeals. The time for such application shall not be extended. (Emphasis supplied).

The primary reason for dismissing a petition for rehearing is that it is filed out of time. Therefore, this court through the amendment of its rules would entertain a petition for certiorari from the Court of Appeals even though the petition for rehearing was dismissed for being out of time. There is no indication that the twenty (20) day period for filing a petition for rehearing in the Court of Appeals was ever intended to be jurisdictional. There is thus nothing to preclude this court from entertaining the petition for certiorari. In this case the illness of counsel was given considerable weight in our decision to entertain the petition for certiorari.

Certiorari having been previously granted, the Court of Appeals opinion is vacated. The order of the Workers' Compensation Court is sustained.

SIMMS, C.J., and HODGES, LAVENDER, WILSON and SUMMERS, JJ., concur.

HARGRAVE, OPALA and KAUGER, JJ, dissent.

OPALA, Justice, with whom KAUGER, Justice, joins, dissenting.

Review by certiorari was improperly granted. This is so because the claimant in this case failed timely to seek rehearing in the Court of Appeals. Her petition for rehearing was dismissed as too late for consideration. Her counsel's effort now to excuse his tardiness by some "extraordinary circumstances" is utterly unconvincing and insufficient in law to overcome the presumption of correctness that attaches to the Court of Appeals' dismissal.

A party's *timely* rehearing request is doubtless a *sine qua non* of its eligibility for certiorari review. Rule 3.13 B, Rules on Practice and Procedure in the Court of Appeals and on Certiorari to that Court, 12 O.S.1981 Ch. 15, App. 3.[1] The Rule 3.13 B bar should never be lowered to aid a litigant whose tardiness has not been overcome by a cogent showing of *force majeure*.

*Every* certiorari seeker whose belated rehearing petition has met in the Court of Appeals with a dismissal order *must* be barred from review on certiorari unless, of course, error or abused discretion is clearly demonstrated. Fundamental fairness to all parties requires that orderly procedure be strictly enforced. *No* area of litigation may lay claim to exemption from the basic strictures of structured practice—not even the workers' compensation law.[2] Though unfettered by a jurisdictional time limit imposed by statute, *review by certiorari is nonetheless regulated by a rule-governed process.* Any court-sanctioned departure from this ordered system will inevitably bring about chaos, caprice and *ad hoc* decisions.[3] On its review of a rehearing dis-

---

1. Rule 3.13 B provides:
   "A party who did not petition for rehearing in the Court of Appeals may not petition for certiorari."

2. *Pryse Monument Co. v. District Court of Kay County, Okl.,* 595 P.2d 435, 438 [1979].

3. See footnote 2 *supra* at 438.

missal this court must never be willing to relax the traditional standards of deference to a decision of the Court of Appeals. Nor should it ever claim for itself unrestrained freedom from any rule-imposed impediment. The process of choosing cases for certiorari review should not become a game of chance in which favor is dispensed only to those who are singled out as worthy of the court's largesse.

Because this claimant did not show that her counsel's failure timely to bring rehearing was due to *an unavoidable casualty,* I would *dismiss* her petition for certiorari.