**Julio FLORES, Plaintiff-Appellant,**

v.

**Otis BOWEN, Secretary of Health and Human Services, Defendant-Appellee.**

No. 85–6068.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 9, 1986.

Decided May 23, 1986.

Michael J. Ortiz, Legal Aid, Los Angeles, Cal., for plaintiff-appellant.

Dennis J. Mulshine, San Francisco, Cal., Janet I. Hawley, Office of Gen. Counsel, Social Security Admin. Baltimore, Md., for defendant-appellee.

Before WRIGHT, NELSON and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge.

This case presents the question whether the Social Security Administration (SSA) may cut off appellant's disability benefits because he is an alien, where appellant holds a valid work authorization and regulations provide that aliens holding such au-

thorization are permanently residing in the United States under color of law.

## Facts

Flores, a native and citizen of Mexico, has lived in the United States since 1969. In December 1976, he applied for permanent resident status. In 1977, a district court in Illinois ordered the Immigration and Naturalization Service to send a letter to approximately 250,000 aliens from certain Western Hemisphere countries who had applied for permanent residence here; this letter authorized the aliens to remain in the United States indefinitely and to obtain employment. *Silva v. Levi*, No. 76–C4268 (N.D.Ill.March 10, 1977), *modified on other grounds sub nom. Silva v. Bell*, 605 F.2d 978 (7th Cir.1979). These letters became known as *Silva* letters and their recipients as *Silva* aliens.

The Social Security Act provides that certain aliens, those "permanently residing in the United States under color of law," are eligible to receive Supplemental Security Income for the Aged, Blind and Disabled (SSI benefits). 42 U.S.C. § 1382c(a)(1)(B)(ii) (1982). In 1977, SSA recognized that *Silva* letter holders were permanently residing in the United States under color of law and therefore eligible for SSI benefits. Accordingly, it issued internal instructions, P.O. M.S. GN 00303.150, and eventually a regulation, 20 C.F.R. § 416.1618(a)(3) (1985), to that effect.

In 1977 Flores obtained a *Silva* letter. Subsequently he became disabled and began collecting SSI benefits.

In December 1981, the *Silva* court dissolved the injunction. The following June, SSA issued a new directive, P.O.M.S. GN E00303.150, instructing its field employees to deny SSI benefits to *Silva* aliens unless they could establish independent evidence of eligibility. However, the regulation providing that *Silva* letter holders are eligible for SSI benefits remained in effect and has never been repealed.[1]

In July 1982, SSA notified Flores that his SSI benefits would end in September. Both the Administrative Law Judge and the Appeals Council upheld this decision. Flores then filed this action against the Department of Health and Human Services in district court. The case was referred to a magistrate and the court adopted the magistrate's proposed findings and recommendations, granting summary judgment in favor of HHS.

## Discussion

Two facts, neither of them in serious dispute, control the outcome of this litigation. The first is the existence of a regulation properly promulgated[2] and adopted by SSA. That regulation provides quite plainly that an alien is permanently residing in the United States under color of law if he can present "[a]n Arrival-Departure Record (INS Form I–94) endorsed 'Voluntary Departure Granted—Employment Authorized' (this form and an INS letter are given to [*Silva* aliens])." 20 C.F.R. § 416.1618(a)(3) (1985). As noted, this regulation continues in effect to this day.

The second controlling fact is that appellant falls squarely within the ambit of the regulation. The government concedes that appellant received a *Silva* letter. Moreover, that letter has never been revoked. The order dissolving the *Silva* injunction did not dissolve all outstanding *Silva* letters; it only provided a procedure for their revocation:

---

**1.** SSA recently published a proposed revision of section 416.1618. 51 Fed.Reg. 9462, 9463 (1986) (to be codified at 20 C.F.R. § 416.1618) (proposed Mar. 19, 1986). The proposal would delete subsection (a)(3), which provides *Silva* aliens are to be considered permanently residing in the United States under color of law.

**2.** At oral argument counsel for the government argued for the first time that the regulation may have exceeded the Secretary's authority. Even if appellee could raise the invalidity of the regu-

lation as a defense, government counsel has given us no persuasive reason for holding the regulation invalid. The regulation was promulgated in accordance with applicable procedures and its substance certainly does not seem to exceed the broad discretion afforded the Secretary in interpreting those statutes entrusted to his administration. *See Miller v. Youakim*, 440 U.S. 125, 145 n. 25, 99 S.Ct. 957, 969 n. 25, 59 L.Ed.2d 194 (1979).

Those class members who were granted work authorization pursuant to the terms of the injunction *shall have continued work authorization until such time as they are notified in writing by the INS that their work authorization has been revoked.* For purposes of this provision, the mailing of such notification to the last address reported by the class member to the INS shall constitute written notification.

*Silva v. Smith,* No. 76 C 4268 (N.D.Ill. Dec. 18, 1981) (order dissolving injunction) (emphasis added). As the ALJ found, after this order was entered "INS began proceedings against some *Silva* letter holders. JULIO FLORES, however, has not been contacted by INS for the purpose of initiating deportation proceedings nor to revoke his work authorization." In the teeth of this finding, government counsel did not dispute that appellant, in literal compliance with applicable regulations, continues to hold a valid *Silva* letter and work authorization.

■ Appellee's arguments fall by the wayside in light of the black-letter principle that properly enacted regulations have the force of law and are binding on the government until properly repealed. *See United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 265, 74 S.Ct. 499, 502, 98 L.Ed. 681 (1954). The government cannot supersede regulations by means of internal operating instructions. While such internal instructions are given some deference in interpreting regulations, they certainly cannot nullify or eviscerate them. *See Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981). Nor can the government derive any help from correspondence between INS and SSA declaring that "any outstanding *Silva* letters [have become] void." Letter from David Ilchert, District Director, INS, to Jane Presley, Office of the Regional Commissioner, SSA (Jan. 12, 1982). Such corre-spondence between agencies cannot supersede the *Silva* court's order, which provides specific procedures for revocation of outstanding *Silva* letters. INS continues to be constrained by the *Silva* order and any actions it takes inconsistent therewith are at best nugatory and at worst contumacious.[3]

■ In sum, until such time as SSA repeals the controlling regulation or INS properly revokes appellant's work authorization, appellant is entitled to continue receiving SSI benefits. The government is free to take one or both of these actions at any time but, until it does, it is bound by the regulation as it now stands.

### Conclusion

The judgment of the district court is reversed.

---

**3.** Quite aside from the *Silva* order, we are skeptical about the proposition that appellant's work authorization could be revoked by intra-governmental correspondence of which he was given no notice. Applicable INS regulations provide that an alien must be given notice and an opportunity to submit evidence before a work authorization may be revoked. 8 C.F.R. § 109.2(b) (1985).