824 F.2d 811
 GRAY LINES TOUR, COMPANY OF SOUTHERN NEVADA, Petitioner,
Public Service Commission of Nevada, Intervenor,
v.
INTERSTATE COMMERCE COMMISSION; United States of America, Respondent.
 No. 86-7228.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 9, 1987.
Decided Aug. 14, 1987.
 
 Franny A. Forsman, Las Vegas, Nev., for petitioner.
 Robert S. Burk, John J. McCarthy, Laurence H. Schecker, Charles F. Rule, Catherine G. O'Sullivan, and John P. Fonte, Washington, D.C., for respondent.
 Ana Colon Aebi, Carson City, Nev., for intervenor.
 Paul Rodgers, Washington, D.C., Charles D. Gray, for amicus curiae.
 Petition for Review of a Decision of the Interstate Commerce Commission.
 Before GOODWIN, BEEZER and DAVID R. THOMPSON, Circuit Judges.
 DAVID R. THOMPSON, Circuit Judge:
 
 
 1
 Petitioners Gray Lines Tour, Company of Southern Nevada (Gray Lines)[1] and Public Service Commission of the State of Nevada (Nevada Commission) petition for review of an Interstate Commerce Commission (ICC) decision, Gray Line Tours of Southern Nevada v. Interstate Tours and Limousine, Inc., 133 M.C.C. 551 (1985). The ICC determined that three ICC-licensed passenger motor carriers' sightseeing tours to Hoover Dam which originated in Nevada and made brief stops in Arizona before returning to Nevada were bona fide interstate operations. It also found that a fourth carrier, which was authorized to provide intrastate "regular-route" passenger service between Las Vegas and Hoover Dam, had violated its ICC certificate by conducting "special operations" to and from the dam site. This operator was ordered to cease and desist conducting such operations.
 
 
 2
 Gray Lines and the Nevada Commission challenge the ICC decision on the ground that it is contrary to law. They also contend the ICC's findings are arbitrary, capricious, and not supported by substantial evidence. We have jurisdiction under 28 U.S.C. Sec. 2342(5) and we affirm.
 
 FACTS
 
 3
 Gray Lines is a Nevada corporation. It holds an ICC certificate which authorizes it to transport passengers both in interstate commerce and in intrastate commerce in Nevada. It also holds a certificate of public convenience and necessity issued by the Nevada Commission which authorizes it to transport passengers on sightseeing tours between points and places in Nevada. It has operated sightseeing tours from Las Vegas to Hoover Dam on the Nevada side of the Colorado River, in intrastate commerce within Nevada, since 1947. It has never extended these tours into Arizona.
 
 
 4
 Since 1983, sightseeing tours from Las Vegas to Hoover Dam have also been provided by Adventure Charters and Tours, Inc. (ACT), Interstate Tours and Limousines, Inc. (Interstate), and Happy Time Express, Ltd. (Happy Time). These three carriers are licensed by the ICC to transport passengers in interstate commerce between states which include the states of Nevada and Arizona. These carriers do not have authority from the Nevada Commission to provide intrastate services within Nevada. The Hoover Dam sightseeing tours provided by ACT, Interstate and Happy Time originate in Las Vegas, take passengers to the Hoover Dam site on the Nevada side of the Colorado River, stop there, then cross over the dam into Arizona, stop there, and then cross back over the dam into Nevada and return to Las Vegas.
 
 
 5
 The fourth carrier, Best West Express (Best West) conducts intrastate "regular-route" passenger service between Las Vegas and the Hoover Dam site on the Nevada side of the Colorado River. Because of differences between the Best West operations and the operations of the three interstate carriers, we address the ICC's decision as it pertains to Best West later in this opinion.
 
 
 6
 Gray Lines contends that although the Hoover Dam tours conducted by ACT, Interstate and Happy Time extend into Arizona, the Arizona portion of the tours is nothing more than "subterfuge" to give the appearance of interstate operations. Gray Lines argues that the tours are really intrastate tours and as such they are subject to regulation by the Nevada Commission. Not surprisingly, this makes an economic difference to Gray Lines. Tour operators, such as Gray Lines, which are subject to regulation by the Nevada Commission can only pay ten percent of the amount of their tour fares as commissions to person who send them business. Interstate carriers who are exempt from regulation by the State of Nevada can pay up to thirty percent of their fares for referrals. Since the interstate carriers have been in business paying the greater referral commissions, Gray Lines' passenger volume has decreased and it has had to increase its charges for the Hoover Dam tour.
 
 
 7
 But Gray Lines is not the only one concerned about competition from the interstate carriers. The State of Nevada has an interest in regulating motor transport carriers in Nevada and in limiting competition among them. Nevada's policy has been articulated by its legislature. That policy is to:
 
 
 8
 provide for fair and impartial regulation, to promote safe, adequate, economical and efficient service and foster sound economic conditions in motor transportation[, and to]
 
 
 9
 discourage any practices which would tend to increase or create competition that may be detrimental to the traveling and shipping public or the motor carrier business within this state.
 
 
 10
 Nev.Rev.Stat. 706.151(1)(c) and (e).
 
 
 11
 The Nevada Commission urges us to remand this case to the ICC with instructions to give further consideration to Nevada's policy concerns, and to direct the ICC to follow an earlier decision by the Nevada Commission which found the Arizona segment of the interstate carriers' Hoover Dam tour to be subterfuge.
 
 DISCUSSION
 A. Standard of Review
 
 12
 We may set aside a ruling of the ICC only if its findings or conclusions are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, in excess of statutory jurisdiction, authority, or limitations, or short of statutory right or unsupported by substantial evidence. 5 U.S.C. Sec. 706(2)(A), (C), (E); Funbus Systems, Inc. v. California Public Utilities Commission, 801 F.2d 1120, 1125 (9th Cir.1986). See also Lodi Truck Service, Inc. v. United States, 706 F.2d 898, 900 (9th Cir.1983) ("In reviewing the Commission's findings, this court is limited to determining whether they are 'arbitrary, capricious, or unsupported by substantial evidence.' " (citation omitted)).B. Analysis
 
 
 13
 (1) Subterfuge
 
 
 14
 Nevada may regulate carriers who conduct intrastate operations within Nevada. Thus, if the Hoover Dam tours operated by ACT, Interstate and Happy Time are intrastate operations, Nevada can regulate the operations and can limit the referral commissions paid by the carriers.
 
 
 15
 Shipments of freight which originate from, and are destined for points within, the same state are shipments in interstate commerce if routed through another state, even though the out-of-state portion of the mileage is small. Pennsylvania Public Utility Commission v. Arrow Carrier Corp., 113 M.C.C. 213, 219 (1971), aff'd sub nom. Pennsylvania Public Utility Commission v. United States, 1973 Fed.Carr.Cas. (CCH) p 56,206 (M.D.Pa.1973), aff'd per curiam, 415 U.S. 902, 94 S.Ct. 1394, 39 L.Ed.2d 460 (1974). However, such routing through another state will be treated as intrastate transportation if the carrier routes the traffic out-of-state as a subterfuge to avoid state regulation. Id.
 
 
 16
 The ICC determined that the interstate carriers' routing of their Hoover Dam tours in and out of Arizona was not subterfuge. It found that the Arizona portion of the ACT, Interstate and Happy Time Hoover Dam tours offered "something significant" beyond what the Gray Lines tour offered. This additional element was the view from the Arizona side of Hoover Dam. The ICC also found that the view of the spillway immediately adjacent to the dam on the Arizona side of the Colorado River was a "worthy attraction" which "apparently ... offer[ed] excellent photo opportunities and is favored over the Nevada spillway for postcard views." The ICC found that the interstate carriers' entries into Arizona had "a reasonable purpose or logical reason, in connection with the sightseeing tours...." These findings are supported by substantial evidence, and are not arbitrary or capricious.
 
 
 17
 Gray Lines and the Nevada Commission argue that the ICC's decision is nonetheless contrary to law because the ICC applied the subterfuge test improperly.
 
 
 18
 Generally speaking, [the ICC] and the courts have looked ... to the "reasonableness" of a carrier's modus operandi, as evidenced by (1) the degree of circuity involved in the interstate route when compared with the "local" route normally employed by intrastate carriers, (2) the presence or absence of economic or operational justification for such routing apart from the carrier's lack of intrastate authority and desire to transport otherwise unavailable traffic, and (3) the incidental or dominant character of the intrastate traffic as a portion of the carrier's overall operation. No single factor is controlling. Nor is there any presumption in favor or against any one.
 
 
 19
 Arrow, 113 M.C.C. at 220.
 
 
 20
 In this case, the ICC focused primarily on the second factor. While an agency must ordinarily follow its own rules and regulations, The Steamboaters v. F.E.R.C., 759 F.2d 1382, 1389 n. 2 (9th Cir.1985), it can alter previously announced policies, or fashion exceptions and qualifications, if it reasonably explains the alteration, id. (citing Atchison, Topeka & Santa Fe Railway Co. v. Wichita Board of Trade, 412 U.S. 800, 808, 93 S.Ct. 2367, 2375, 37 L.Ed.2d 350 (1973)).
 
 
 21
 Here, the ICC reasonably explained the alteration in its approach to determining the existence of subterfuge. See Gray Line Tours of Southern Nevada v. Interstate Tours and Limousine, Inc., 133 M.C.C. 551, (1985). This is a case of first impression because it requires an interpretation of the term "subterfuge" in the context of passenger sightseeing operations. Considering the first Arrow factor, we agree with the ICC that circuity of routing is less significant to the subterfuge determination in passenger sightseeing cases than in freight shipment cases. As the ICC noted, passengers whose primary purpose in traveling is to get to a particular destination will not lightly tolerate circuitous routing which delays their journey, while sightseeing passengers are unlikely to complain about circuitous routes which take them to points of interest. Similarly, the third Arrow factor has little significance in determining whether routing sightseeing tour passengers into another state is a subterfuge. Admittedly, in the case before us the interstate carriers' travel time and distance within Nevada as a portion of their Hoover Dam tours is "dominant" compared with the travel time and distance attributable to the Arizona segment of the tours. But this does not make the Arizona segment of the Hoover Dam tours "subterfuge" per se, so long as there is a legitimate purpose for routing sightseers into Arizona which is independent of the effect such routing has upon the authority of Nevada to regulate the tour operators. The relevant inquiry in this context, therefore, is whether the interstate carriers have an independent economic or operational justification for routing their Hoover Dam tours into Arizona. This is the second Arrow factor, and the ICC properly focused upon it. The ICC did not fail to follow the law in analyzing the subterfuge issue in this fashion. It was justified in altering the manner in which it had previously applied the subterfuge test because in this case it was considering for the first time a claim of subterfuge in the sightseeing passenger setting.
 
 
 22
 (2) The Nevada Commission's Decision
 
 
 23
 Gray Lines and the Nevada Commission contend the ICC should have followed an earlier decision of the Nevada Commission which found the entries into Arizona to be subterfuge. At Gray Lines' request, the ICC took official notice of the Nevada Commission's decision, but ruled that the decision did not govern the ICC's determinations. Gray Lines and the Nevada Commission argue that deference should have been given to the Nevada Commission's decision because it not only ruled on the subterfuge issue but also pronounced the official Nevada policy of limiting competition among motor carriers within the state. They argue that 49 U.S.C. Sec. 10101 compels the ICC to follow the Nevada Commission's decision. This section provides, in part, that in regulating transportation of passengers the federal government should
 
 
 24
 cooperate with the States on transportation matters for the purpose of encouraging the States to exercise intrastate regulatory jurisdiction in accordance with the objectives of this subtitle.
 
 
 25
 49 U.S.C. Sec. 10101(a)(3)(A).
 
 
 26
 Gray Lines and the Nevada Commission also rely upon 49 U.S.C. Sec. 10101(a)(1)(C) and (E), which provide that it is the policy of the United States government "to encourage sound economic conditions in transportation, including sound economic conditions among carriers;" and "to cooperate with each State and the officials of each State on transportation matters." It is contended that in failing to follow the Nevada Commission's decision the ICC failed to cooperate with Nevada in encouraging sound economic conditions within Nevada which Nevada's regulation of motor carriers is designed to accomplish.
 
 
 27
 The question, however, is not whether deference should be accorded a decision of the Nevada Commission. The question is one of jurisdiction. The issue which the ICC was called upon to decide was whether the Hoover Dam tours, as conducted by the interstate carriers, were within the scope of the operating authority the carriers held under their ICC certificates. The resolution of that question is within the jurisdiction of the ICC. State regulatory authorities may not assume the power to interpret the boundaries of federally issued certificates or to impose sanctions upon operations assertedly unauthorized by the federal certificate. Service Storage & Transfer Co. v. Virginia, 359 U.S. 171, 178-79, 79 S.Ct. 714, 718-19, 3 L.Ed.2d 717 (1959). The ICC is entitled to interpret, in the first instance, certificates it has issued. Service Storage, 359 U.S. at 177, 79 S.Ct. at 718; see also E.E.O.C. v. Childrens Hospital Medical Center of Northern California, 719 F.2d 1426, 1429 (9th Cir.1983) ("the question of jurisdiction is, in the first instance, for the agency and not the courts"). The ICC correctly determined that it had jurisdiction to determine whether the Hoover Dam tours as conducted by ACT, Interstate and Happy Time were valid interstate operations within the scope of their ICC-issued certificates. The determination by the ICC that these interstate carriers were operating within the scope of their ICC certificates, notwithstanding the decision of the Nevada Commission, did not violate the policy statements contained within 49 U.S.C. Sec. 10101.
 
 
 28
 (3) Best West
 
 
 29
 The ICC found that Best West was conducting "special operations" in transporting passengers between Las Vegas and the Hoover Dam site in violation of its ICC certificate. Best West's operations were entirely intrastate. While Best West's ICC certificate permitted it to conduct intrastate passenger transportation service (as well as interstate service), the service it was authorized to conduct was limited to "regular-route" passenger service. The ICC found that instead of providing "regular-route" passenger service to the Hoover Dam site, Best West was providing tour services "in the nature of special operations" not authorized by its ICC certificate. The ICC ordered Best West to cease and desist from conducting such services. Gray Lines contends the ICC should have cancelled Best West's ICC certificate. However, as the ICC explained in its Reopening Decision,
 
 
 30
 On complaint, as here, the Commission may revoke a certificate only after issuing an order to the authority holder and the latter's willful non-compliance with that order. See 49 U.S.C. 10925(c)(1). In accordance with these procedures, we entered an order requiring Best West to cease and desist from conducting unlawful operations. Gray Line does not now assert that Best West persists in willful performance of the unlawful intrastate operations, and, thus, no further action to revoke Best West's interstate certificate is required.
 
 CONCLUSION
 
 31
 The findings and conclusions of the ICC are not arbitrary or capricious and are supported by substantial evidence. Its decision is in accordance with law and not in excess of its statutory jurisdiction, authority or limitations.
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 In its Petition for Review, Gray Lines states its name is "Gray Line Tours of Southern Nevada, Inc."